# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHRISTIE KUHN and SUSAN CAKL, individually, and on behalf of a class of others similarly situated, | : : : | Civil Action No. _____ |
| | : | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : : | |
| WARNER MUSIC GROUP, CORP., a Delaware corporation, | : : | |
| | : | |
| Defendant. | : : | |

Plaintiffs Christie Kuhn and Susan Cakl, individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to them and on information and belief as to all other matters, by and through the undersigned counsel, hereby brings this Class Action Complaint against Defendant Warner Music Group, Corp., ("WMG" or "Defendant"), and alleges as follows:

## INTRODUCTION

1. Warner Music Group, Corp., is an American multinational entertainment and recording label conglomerate and the third largest company in the global music industry.

2. In 2019, WMG recorded its highest year of revenue at $4.47 billion.

3. Integral to its multibillion-dollar business, WMG operates a number of e-commerce websites throughout the United States. WMG sells its products and services through these sites, all of which use a payment system designed and maintained by WMG.

4.      However, because of WMG's inadequate data security practices, from

approximately April 25, 2020 to August 5, 2020, unauthorized third parties compromised an

undisclosed number of WMG's U.S.-based e-commerce websites that are serviced through an

external provider. On September 2, 2020, WMG notified the California Attorney General of the

breach.

5.      WMG also began sending notices consumers who may have made purchases on

one of their e-commerce sites during the aforementioned time period that their Personally

Identifiable Information ("PII") was potentially acquired by an authorized third party. The PII

includes name, email address, telephone number, billing and shipping address, and payment card

details (card number, CVC/CVV and expiration date).

6.      Due to WMG's carelessness and inadequate security, Plaintiffs and Class

Members have suffered irreparable harm and are subject to an increased risk of identity theft.

Plaintiffs and Class Members' PII has been compromised and they must now undertake

additional security measures to minimize the risk of identity theft.

## JURISDICTION

7.      The Court has subject matter jurisdiction over this case pursuant to the Class

Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the proposed class is a

citizen of a state different from one of the Defendant home state, the number of proposed class

members exceeds 100, and the aggregate amount in controversy exceeds $5,000,000, exclusive

of interest and costs.

8.      The Court has personal jurisdiction over Defendant because it is headquartered in

New York. In addition, the WMG Terms of Service provide that all users "consent to the

exclusive jurisdiction of the federal and state courts located in New York, New York, U.S.A.,

and waive any jurisdictional, venue, or inconvenient forum objections thereto."

9.      Venue is also proper in this district pursuant to 28 U.S.C. § 1391 because a

substantial part of the events and/or omissions giving rise to Plaintiffs' and the Class Members'

claims occurred within this District.

## PARTIES

10.      Plaintiff Christie Kuhn resides in Dix Hills, in the State of New York.

11.      Plaintiff Kuhn purchased merchandise and a digital music download from one of

WMG's e-commerce websites between April 25, 2020 and August 5, 2020.

12.      Plaintiff Susan Cakl resides in Valley Village, in the State of California.

13.      Plaintiff Cakl purchased merchandise, including vinyl, from one or more of

WMG's e-commerce websites between April 25, 2020 and August 5, 2020.

14.      Defendant Warner Music Group, Corp. is a Delaware Corporation headquartered

in New York, New York. Its principal place of business is at 1633 Broadway, New York, NY

10019.

## FACTUAL BACKGROUND

15.      As the third largest multinational entertainment and recording label conglomerate

in the global music industry, with revenues in the billions of dollars, WMG has both the duty and

the financial wherewithal to provide secure platforms for making purchases. Plaintiffs and the

Class had a reasonable expectation that WMG would provide such platforms for purchases,

which include the entering of PII, and would keep that PII safe and secure.

16.     Instead, on or about September 2, 2020, Plaintiffs and Class Members were notified their PII had been stolen in a "months-long magecart[1] style attack."   The PII stolen includes "name, email address, telephone number, billing and shipping address, and payment card details (card number, CVC/CVV and expiration date)" according to the Notice of Data Breach submitted to the Office of the Attorney General for the State of California.

17.     In the Notice of Data Breach, WMG stated "[w]e want to emphasize at the outset that keeping personal information safe and secure is very important to us."

18.     Yet, this commitment is belied by WMG's unwillingness to voluntarily disclose to Plaintiffs and Class members which of its sites were impacted by the Data Breach, making it difficult for Class Members to know what measures to take in mitigating any harm resulting from the theft of their PII.  "When asked, the WMG spokesperson declined to name the e-commerce sites affected in the attack, saying that the company 'isn't commenting further than the statement.'"

19.     Not only is WMG unwilling to disclose which of its e-commerce sites were impacted, but it waited almost an entire month before notifying Plaintiffs and Class Members that they may have been victims of the Data Breach.  This delay in notification to Plaintiffs and Class Members gave the hackers time to use the stolen PII without restriction, further harming Plaintiffs and Class Members.

20.     WMG failed to protect Plaintiffs and Class Members by employing low-quality, second-rate security to detect intrusions, allowing hackers to steal payment and personal information for approximately four months without internal detection. The extremely long

---

[1] "Magecart" refers to a conglomerate of identity thieves that specialize in cyberattacks involving digital credit card theft by skimming online payment forms.

duration of the data breach without any detection by WMG shows WMG's data security practices were and are grossly insufficient.

21.     Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible to traditional search engines. Law enforcement has difficulty in policing the "dark web" due to the heavy encryption, which allows users to conceal identities and online activity.

22.     Once PII is sold, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media and credit card details.  This can lead to other sensitive data being harvested from the victim's accounts, as well as from those belonging to family, friends and colleagues.

23.     Stolen PII can be used for many unlawful purposes. In addition to being used to compromise existing accounts, PII also can be used by identity thieves to open new financial accounts, incur charges in the name of Plaintiffs and Class Members, close credit and debit cards, and other unauthorized activities.

24.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.

25.      Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." However, WMG did not rapidly report to Plaintiffs and Class Members that their PII had been stolen because it took WMG almost four weeks to notify them.

26.    Victims of identity theft can suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

27.    Victims of identity theft also often suffer indirect financial costs, including the costs incurred due to litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit.

28.    In addition to out-of-pocket expenses that can exceed thousands of dollars for the victim of new account identity theft, and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

29.    Further exacerbating the problems faced by victims of identity theft, the thieves may wait years before attempting to use the stolen PII. Indeed, to protect themselves, Plaintiffs and Class Members will need to be remain vigilant against unauthorized data use for years and decades to come.

**Plaintiffs' Experience**

30.    Plaintiff Kuhn purchased merchandise and a digital music download from one of WMG's e-commerce sites between April 25, 2020 and August 5, 2020 using her debit card.  In or about September 2020, Plaintiff received her August debit card statement.  She noticed numerous unauthorized charges, totaling more than five hundred dollars.

31.     Plaintiff Kuhn notified her bank and froze her account while the unauthorized

charges were being investigated. She then opened an account at Chase Bank and transferred her

direct deposits to her new account.

32.     Within a couple of weeks, Plaintiff Kuhn also received a Notice of Data Breach

from Warner Music Group dated September 3, 2020, which indicated her PII had been acquired

by an unauthorized party.

33.     Plaintiff Cakl purchased merchandise and a digital music download from one of

WMG's e-commerce sites between April 25, 2020 and August 5, 2020 using her credit card.

34.     Within a couple of weeks, Plaintiff Cakl also received a Notice of Data Breach

from Warner Music Group dated September 3, 2020, which indicated her PII had been acquired

by an unauthorized party.


## CLASS ACTION ALLEGATIONS

35.     Plaintiffs brings this lawsuit as a class action on behalf of themselves and all

others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil

Procedure 23(a), 23 (b)(2), 23(b)(3), and 23(c)(4).

36.     Plaintiffs seek to represent a proposed Nationwide class defined as follows:

> All residents of the United States who made purchases on
> Defendant's e-commerce websites between April 25, 2020 and
> August 5, 2020.

37.     Excluded from the proposed classes is Defendant, including any entity in which

Defendant has a controlling interest, is a subsidiary, or which is controlled by Defendant, as well

as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and

assigns of Defendant.

38.      Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

39.      **Numerosity:** Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court. The Class members are readily identifiable from information and records in Defendant's possession, custody, or control.

40.      **Typicality:** Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, Plaintiffs and the other Class Members were injured through the substantially uniform misconduct by WMG. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other class members, and there are no defenses that are unique to Plaintiffs.

41.      **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class Members, including:

a)      Whether Defendant engaged in the wrongful conduct alleged herein;

b)      Whether Defendant's inadequate data security measures were a cause of the data breach;

c)      Whether Defendant owed a legal duty to Plaintiffs and the other Class members to exercise due care in collecting, storing, and safeguarding their PII;

d)    Whether Defendant negligently or recklessly breached legal duties owed to Plaintiffs and the other class members to exercise due care in collecting, storing, and safeguarding their PII;

e)    Whether Plaintiffs and the Class are at an increased risk for identity theft because of the data breach;

f)    Whether Plaintiffs and the Class have suffered benefit of the bargain losses because of the data breach;

g)    Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised by an unauthorized party;

h)    Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

i)    Whether Plaintiffs and the other Class Members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

j)    Whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

42.    These issues not only predominate, but they are also appropriate for issue certification under Rule 23(c)(4).

43.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous questions that dominate this action.

44.    **Adequacy of Representation:** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the other Class members. Additionally, Plaintiffs have retained counsel competent and experienced in complex class action litigation. Therefore, the Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

45.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CHOICE OF LAW

46.    The WMG Terms of Service provide that all users "hereby agree that this Agreement (and any claim or dispute arising in connection with this Agreement or your use of the Site) is governed by and shall be construed in accordance with the laws of the State of New York, U.S.A., without regard to its principles of conflicts of law…" Accordingly, New York law applies to the claims of all Class Members regardless of their state of residence.

## UNCONSCIONABILITY OF DISCLAIMER

47.     The WMG Terms of Use contain a purported disclaimer of liability and damages

that is both procedurally and substantively unconscionable. It provides:

> WE, OUR AFFILIATES AND OUR RESPECTIVE ARTISTS,
> REPRESENTATIVES AND PROVIDERS WILL NOT BE LIABLE FOR ANY
> INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR
> PUNITIVE DAMAGES OF ANY KIND IN CONNECTION WITH THE SITE,
> NOR FOR ANY DAMAGES FOR LOSS OF PROFITS, LOSS OR
> INTERRUPTION OF BUSINESS, LOSS OF USE, LOSS OF DATA, LOSS OF
> OTHER INTANGIBLES, LOSS OF SECURITY OF INFORMATION YOU
> HAVE PROVIDED IN CONNECTION WITH YOUR USE OF THE SITE
> (INCLUDING, WITHOUT LIMITATION, IN CONNECTION WITH YOUR
> USE OR RECEIPT OF ANY THIRD PARTY APPLICATIONS OR THIRD
> PARTY CONTENT), OR UNAUTHORIZED INTERCEPTION OF ANY SUCH
> INFORMATION BY THIRD PARTIES, EVEN IF ADVISED IN ADVANCE
> OF SUCH DAMAGES OR LOSSES. FURTHER, WE, OUR AFFILIATES AND
> OUR RESPECTIVE ARTISTS, REPRESENTATIVES AND PROVIDERS
> WILL NOT BE LIABLE FOR DAMAGES OF ANY KIND RESULTING
> FROM YOUR USE OF THE SITE OR FROM ANY THIRD PARTY
> APPLICATIONS, THIRD PARTY CONTENT, INFORMATION OR
> MATERIALS ON THE SITE. YOUR SOLE AND EXCLUSIVE REMEDY FOR
> DISSATISFACTION WITH THE SITE IS TO STOP USING THE SITE. OUR
> MAXIMUM LIABILITY FOR ALL DAMAGES, LOSSES AND CAUSES OF
> ACTION, WHETHER IN CONTRACT, TORT (INCLUDING, WITHOUT
> LIMITATION, NEGLIGENCE) OR OTHERWISE SHALL BE THE TOTAL
> AMOUNT PAID BY YOU TO US TO ACCESS AND USE THE SITE.
>
> IT IS POSSIBLE THAT APPLICABLE LAW MAY NOT ALLOW FOR
> LIMITATIONS ON CERTAIN IMPLIED WARRANTIES OR EXCLUSIONS
> OR LIMITATIONS OF CERTAIN DAMAGES; SOLELY TO THE EXTENT
> THAT SUCH LAW APPLIES TO YOU, SOME OR ALL OF THE ABOVE
> DISCLAIMERS, EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO
> YOU, AND YOU MAY HAVE ADDITIONAL RIGHTS.

48.     By its own terms, the disclaimer of liability does not apply to direct damages. And

to the extent the Terms of Use purports to exempt consequential damages and damages relating

to "loss of security of information you have provided," and to the extent the damage limitation

purports to eliminate damages or limit them to the amount the Class members paid to use the

site, the Terms of Use are "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable ... according to [their] literal terms."

49.     These provisions of the Terms of Use are procedurally unconscionable because they are buried in an adhesion contract foisted on Class members with no opportunity to negotiate. They are also substantively unconscionable because they create an unfairly one-sided allocation of risk and are not commercially reasonable. No Class member signing up for any WMG service can be fairly expected to understand and agree that he or she is purportedly waiving any right to remedies for a "loss of security of information you have provided…"

## COUNT I

### Negligence
**(On Behalf of Plaintiffs and the Nationwide Class)**

50.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

51.     WMG owed a duty to Plaintiffs and the other Class members to exercise reasonable care in safeguarding and protecting their PII that was in its possession from being compromised, lost, stolen, misused, or disclosed to unauthorized parties. This duty included, among other things, designing, maintaining, and testing its security systems to ensure that Plaintiffs' and the other Class Members' PII was adequately secured and protected. Defendant further had a duty to implement processes that would detect a breach of its security system in a timely manner.

52.     WMG also had a duty to timely disclose to Plaintiffs and the other Class Members that their PII had been or was reasonably believed to have been compromised. Timely disclosure

was appropriate so that, among other things, Plaintiffs and the other Class Members could take appropriate measures to cancel or change usernames, pin numbers, and passwords on compromised accounts, to begin monitoring their accounts for unauthorized access, to contact the credit bureaus to request freezes or place alerts and take all other appropriate precautions.

53.     By being entrusted by Plaintiffs and the Class to safeguard their PII, WMG had a special relationship with Plaintiffs and the Class. Plaintiff and the Class signed up for Defendant's services and agreed to provide their PII with the understanding that Defendant would take appropriate measures to protect it and would inform Plaintiffs and the Class of any breaches or other security concerns that might call for action by Plaintiffs and the Class. But, Defendant did not. Defendant not only knew its data security was inadequate, they also knew they didn't even have the tools to detect and document intrusions or exfiltration of PII. WMG is morally culpable given its wholly inadequate safeguards and refusal to notify Plaintiffs and the Class of its security vulnerabilities.

54.     WMG breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information; allowing unauthorized access to Plaintiffs' and the other Class members' PII stored by Defendant; and failing to recognize and stop the breach in a timely manner.

55.     WMG also breached its duty to timely disclose that Plaintiffs and the other Class members' PII had been, or was reasonably believed to have been, stolen or compromised.

56.     WMG's failure to comply with industry regulations and the delay between the first vulnerability date and the date WMG informed users of the data breach further evidence

WMG's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII.

57.    But for WMG's wrongful and negligent breach of its duties owed to Plaintiffs and the other Class members, their PII would not have been compromised, stolen, and viewed by unauthorized persons.

58.    The injury and harm suffered by Plaintiffs and the other Class Members was the reasonably foreseeable result of WMG's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class Members' PII. Defendant knew or should have known that their systems and technologies for processing and securing Plaintiffs' and the other Class Members' PII had security vulnerabilities.

59.    As a result of WMG's negligence, Plaintiffs and the other Class Members incurred economic damages, including expenses for credit monitoring, loss of use and value of their debit and/or credit cards, lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; costs associated with placing freezes on credit reports; the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of customers and former customers in their continued possession; future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class members; and expectation damage.

## COUNT II

### Violation of Section 349 of the New York General Business Law
**(On Behalf of Plaintiffs and the Nationwide Class)**

60.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

61.    Plaintiff Kuhn resides in New York and is a "person" within the meaning of New York's Uniform Deceptive Trade Practices Act, Gen. Bus. Law § 349.

62.    Plaintiffs and the Class Members provided their PII to Defendant WMG as a part of transactions in business, trade, or commerce as defined in § 349. Defendant's actions as described herein constituted "consumer-oriented conduct" under § 349.

63.    As outlined above, Defendant WMG engaged in deceptive acts and practices in the conduct of its business and in the furnishing of its services, including failing to implement adequate data security measures, failing to protect Plaintiffs' and the Class Members' PII from theft, failing to advise Plaintiffs and the Class Members of its inadequate data security, and failing to timely notify Plaintiffs and the Class Members of the breach.

64.    These acts and omissions were materially misleading. WMG's continued non-compliance with data security practices affected a broad group of individuals, including Plaintiffs and the Class.

65.    Plaintiffs and the Class Members relied on WMG to safeguard their PII when they provided it to WMG, and relied on WMG's deceptive acts and practices when they provided that PII in exchange for WMG's goods and services.

66.    As a direct and legal result of WMG's deceptive acts and practices, Plaintiffs and the Class Members have suffered ascertainable and concrete damages as alleged above.

67.      Plaintiffs bring this action on behalf of themselves and the Nationwide Class

under § 349(h) of the New York General Business Law for actual or statutory damages and

treble damages as permitted by law.

## COUNT III

### Breach of Implied Contract
### (On Behalf of Plaintiffs and the Nationwide Class)

68.      Plaintiffs incorporate by reference all allegations in this Complaint as though fully

set forth herein.

69.      Through the operation of its e-commerce platforms, Defendant WMG solicited

Plaintiffs and the Class Members to make purchases through WMG's e-commerce platforms

using the credit and debit cards. In so doing, WMG was making an offer to Plaintiffs and the

Class Members that included the implied promise to maintain the PII provided by Plaintiffs and

the Class Members in their commercial transactions with WMG and its affiliated safe and secure.

70.      Plaintiffs and the Class Members accepted WMG's offer when they agreed to

purchase goods or service from WMG and its affiliates through their e-commerce platform. At

the time of acceptance, an implied contract was formed between Plaintiffs and the Class

Members and Defendant WMG that included WMG's implied promise to protect any PII

provided by Plaintiffs and the Class Members.

71.      WMG breached these implied contracts by failing to keep the PII provided by

Plaintiffs and the Class Members safe and secure, as described above.

72.      As a result of the breach of these implied contracts by WMG, Plaintiffs and the

Class Members suffered the economic damages described above.

## COUNT IV

### Unjust Enrichment
**(On Behalf of Plaintiffs and the Nationwide Class)**

73.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

74.    Defendant WMG has received and retained a benefit from Plaintiffs and members of the Class, resulting in inequity.

75.    WMG benefitted through its unjust conduct by profiting from selling goods or services that required Plaintiffs and the Class Members to provide valuable PII without providing adequate data security for that PII.

76.    Plaintiffs and the Class Members conferred a benefit on WMG when they purchased goods or services from WMG and provided WMG with their PII and payment information.

77.    Defendant WMG failed to provide Plaintiffs and the Class with full compensation in exchange for their PII, which WMG obtained through inequitable means because WMG failed to disclose its inadequate data security practices.

78.    It is inequitable for Defendant WMG to retain these benefits.

79.    This claim is pled in the alternative in the event Plaintiffs and the Class Members do not have an adequate remedy at law.

80.    As a result of WMG's inequitable conduct, the amount of its unjust enrichment should be disgorged, in an amount to be proven at trial.

## COUNT V

### Negligence per se
**(On Behalf of Plaintiffs and the Nationwide Class)**

81.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

82.     In engaging in the negligent acts and omissions previously alleged, Defendant WMG violated Section 5 of the FTC Act, which prohibits "unfair… practices in or affecting commerce." This prohibition includes failing to have adequate data security measures and failing to protect customers' PII.

83.     Defendant WMG violated Section 5 by not complying with industry standards and continually failing to have proper measures in place to protect the PII of Plaintiffs and the Class Members.

84.     Plaintiffs and the Class Members are among the class of persons Section 5 was designed to protect, and the injuries suffered by Plaintiffs and the Class Members is the type of injury Section 5 was intended to prevent. As a result, Defendant WMG is negligent per se.

85.     As a result of WMG's negligence per se, Plaintiffs and the Class Members suffered the damages described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an order:

a.     certifying the Class under Federal Rule of Civil Procedure 23, as requested herein;

b.     appointing Plaintiffs as Class Representatives and undersigned counsel as Class Counsel;

c.     finding that Defendant engaged in the unlawful conduct as alleged herein;

d.      Enjoining Defendant's conduct and requiring defendant to implement proper data security practices;

e.      awarding Plaintiffs and the other Class members damages;

f.      requiring Defendant to rectify all damages caused by their misconduct;

g.      awarding Plaintiffs and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

h.      awarding Plaintiffs and the other Class members reasonable attorneys' fees, costs, and expenses; and

i.      granting such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands a jury trial as to all issues triable by jury.

Dated: September 16, 2020

By: _____
        Gary S. Graifman
        Melissa R. Emert
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone: (845) 356-2570
Facsimile: (845) 356-4335
*ggraifman@kgglaw.com*
*memert@kgglaw.com*

**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
Gayle M. Blatt (*PHV application forthcoming*)

*gmb@cglaw.com*
Jeremy Robinson (*PHV application forthcoming*)
*jrobinson@cglaw.com*
P. Camille Guerra (*PHV application forthcoming*)
*camille@cglaw.com*
James M. Davis (*PHV application forthcoming*)
*jdavis@cglaw.com*
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

***Attorneys for Plaintiffs and the Class***